your case under advisement. Okay. For the second case, second and final case today, we have number 21-13825, David Adams versus Palm Beach County. And I'll give you all a chance to get set up. And Mr. Friedman, I see that you have reserved five minutes for rebuttal. You may proceed when you are ready. I have.  It pleases the court. My name is Howard Friedman. I represent the plaintiff appellants on the appeal from the dismissal of the collective action complaint for failure to state a claim of action upon which relief may be granted. Counsel, can I ask you some procedural questions, because I'm a little confused about the procedural posture. So it may be taking us a little bit away from where you wanted to go, but I just need this clarified from my mind. It's important in this case. Thank you. I appreciate it. So the three name plaintiffs, as I understand, are Mr. Adams, Mr. Cashmere, and Mr. Shaw, correct? Yes, Your Honor. And then as I understand it, at some point, two folks opted in, Carrie Quincy and Jeffrey Steigman or Steigman? I believe so. Okay. And then a motion to dismiss was filed on the amended complaint and the district court ruled dismissed on the amended complaint, correct? You're talking, I believe, about the first amended complaint. Yes, sir. The operative complaint that we have. That's the second amendment. Right. So there's, he dismisses the first amendment, gives leave to amend a second amendments filed. That's what we're here for. But so the three name plaintiffs file an amended operative complaint with a collective action on the FLSA and that complaint is dismissed and that's why we're here. Oh, that, well, that's the complaint that we're here on. That's right. Yes. So I have a question. Did the district court make any determination that the opt-in plaintiffs, Casey Quincy and Jeffrey Steigman were similarly situated to the plaintiffs? I don't believe any, any such findings were made. Right. And did the district court dismiss those opt-in plaintiffs? Well, the district court simply dismissed the second amended complaint with prejudice without saying anything else about that. So do we have jurisdiction? Well, I believe since it was a dismissal with prejudice that we do, if you're asking whether or not you have jurisdiction as a result of the other opted plaintiffs, um, any other plaintiffs that are still out there that have not been, but they, they, they are out there, but I don't believe necessarily that they have been absolutely made part of this action or named. So here's, here's the reason I ask, because we have a case called Mickles, which dealt with some of these issues. It's not exactly the same procedural posture. And in Mickles, we said that the plain language of section two 16 B, which is the, the collective action statute supports that those who opt in become party plaintiffs upon the filing of a consent and that nothing further, including conditional certification is required. So their parties, the second they opt in according to Mickles. And then we said there, um, that the opt-in plaintiffs remain party plaintiffs until the they are not similarly situated and two dismisses them. Well, so my, my question is, are they still party plaintiffs? It's a great question, judge. And I don't know if I have the direct answer, but I know I'm springing this on you. But judge, I guess reasonably, um, in addressing that the district court basically found that whoever's before him and noting that all of the others would have a, would be in a similar position, at least that's what was alleged in the complaint that they were indeed volunteers incorrectly. We believe found that the problem is though they have due process, once they're plaintiffs, they have due process rights and you know, you don't represent them, uh, at least officially as I could best as I can tell. And even if you did it, the motion was filed on behalf of the three name plaintiffs. So my concern is that if a motion isn't filed on their behalf or all those who've joined the collective action at that point, that the dismissal is not effective as to them. Imagine if there was just two, forget a collective action, if they're just two plaintiffs in a case, one files a motion to dismiss district court dismisses as to that person, it, I mean, in practical effect, it would dismiss as to them because it's probably the same complaint, but in reality we, it has to be a separate motion that's filed in a separate proceeding and given notice and an opportunity to be heard. Right. Understood judge. And as I said, it's a great question. It also baits the question as to whether or not they themselves would have the right to file their own, I guess, separate act cause of action. Um, or go ahead and state that, listen, we weren't part of it the first time around. We would like to go ahead and leave to amend to go ahead and perhaps try to cure that, which the district court found was insufficient. I don't know the answers to that. I know in Mickles we, we lay out, we reiterate a process that we set out for how to deal with these. Generally what we've said is you need to make the similar situated finding really early in the case because once you do, then they're sort of part of it and then go on to do what happened here, here, the district court, and it has a right to do that, but it jumped the gun and that's why we are where we are. I agree. I do believe that the district court jumped the gun so to speak because we didn't even get to a certain point to where that is something that could have been flushed out. I don't want to take us too far away from the, what you want to argue, but I, I did want to ask those questions. Thank you. Well, it's right. Obviously we all know that, you know, in this particular case we're here because Palm Beach County competes against other Florida golf clubs by operating a world-class golf course, which is a for-profit business and in doing so what Palm Beach County did here is they obviously went out and they solicited individuals to be working at the golf course who of course were as they claim to be volunteers as people that were dealing with the golf carts, the for the customers, which is of course what is expected with the other private golf courses that they compete with. Well, so let me ask you sort of a basic question going back to the allegations of the complaint. So the, the part of the labor regulations that we're looking at in this case allow for volunteers and it, it, it, the regulation provides that individuals who are not employed in any capacity by the state or local government agencies often donate hours of service to a public agency for civic or humanitarian reasons. Um, and, and our recent McKay case, the parties in that case had stipulated that the, the employees slash volunteers were not motivated by civic or humanitarian reasons, but I don't see anything in your complaint that even speaks to that issue, correct? Well, actually they specifically, you mean as far as alleging that they are not there volunteering, not there solely for that or in part for that or not at all, that's, you're not speaking to that. You're just, we're, what we're going to be deciding today is really is the free or the free rounds of golf, reasonable benefits boils down to that point, whether or not they're either reasonable benefits or nominal fees, that's really what it boils down to. And of course we state clearly that they're not, so we're not looking at the motivation of the, we're not now, I mean, I mean perhaps at another stage we would be if we were permitted to go ahead and conduct discovery knowing that there may be many other plaintiffs that may have volunteered for a variety of different reasons, all that I can say why we're here today. Correct. Okay. Just making sure. Can you tell me why you think this is not a nominal fee? Sure. Well, first of all, what we know is, is that they can't be volunteers if in fact what they were was promised an in-kind compensation. I know you make this argument in the brief, but it really does sort of gild the lily a little bit. I mean, it either is compensation or it's, or it's a fee or reasonable benefit. And I think the question is to me is, does it fit within the definition of reasonable benefit or nominal fee? And if it doesn't, then the promise is a compensation. I think that's how we have to look at it. Well, sure. I believe clearly with the definition under the, uh, under the regulation, it is not a, a reasonable benefit. Well, let's talk nominal fee. I will. So if you're looking at just whether it's a nominal fee, one can just go ahead and take a look at what we've alleged in the complaint. That is, listen, you need to work for seven hours. If you work for seven hours, you are entitled to unlimited rounds of golf at a discount of $91 per round for that particular week, that, that, that particular week. So if they just go ahead and they work one, one shift of seven hours and play one round of golf, that's $13 per hour. If you just want to do the math, the mathematics, the math on that, if they played four rounds of golf, all of a sudden it's $52 an hour. One can't sit there and say that that is a nominal fee. If we're looking at it in the dollars, it seems to me the way the district court looked at it. And I don't know that this is unreasonable is they just looked at how many hours that the name plaintiffs played over the course of their, of their time. And it turned, I did quick math. If you average all of them together, it's about $2,200 for a, for a year. Isn't that similar to what the coach got in Parham? Well, well, well, first of all, the, what the coach got in Parham, the difference there is that he got a stipend, which what we know was not tied to any particular time or effort. I agree. What's it look like in this case? Well, so, but go back to the hypothetical you just said. So what you, as you just told me, you get the unlimited benefit for if you did it one shift and one time, or you get it. If you did one shift and you played five rounds, the error that the district court made there is he did the calculation as to what that particular worker actually, how many times they played. That's not the issue. It's not what, how many times they actually played or received it. It's what they were offered. They were promised they could have played as many times as they wanted. And that's what the regulation speaks to. It's not a question of what they necessarily received, but what they could have received and as to determine whether or not that is a, either nominal fee or a, um, regional benefit. How is this tied to productivity? How is this tied to productivity back to judge Lux question in the fourth circuit, the coach is getting this stipend. That's not changing based on the number of hours. So you could hear, have a volunteer. Once you reach that seven hour threshold, you could, you have a volunteer who volunteers every day. You could have a volunteer who volunteers for set volunteers for seven hours. They are entitled to the same benefit, which is with certain restrictions, unlimited golf. Well, I, I see my time is up, but I can answer that question. Absolutely. Well, the, the, as I understand what your question is, is that the, the distinction certainly is that the, um, workers, um, the, our, our plaintiffs, um, they are required to work as we know them, the seven hours, if they decide to work one shift, they can go ahead and have unlimited golf. If there is a volunteer or I'm sorry, a worker who is going to go ahead and work more shifts, that's fine. All they have to do is meet that one threshold and have unlimited rounds of golf. And as, and, and again, under the rules or the regulations, it's not a question of how often they, they decide to use it. It's a question of whether or not they were promised the, that particular benefit. And that is why it's certainly, it's not the nominal fee and it's really as in kind compensation. Right. But I just don't know that you're distinguishing from the fourth circuit. The fourth circuit, um, is looking at this coach, no matter how many hours he works, volunteers works, however you want to, um, call it, he gets a, the same amount. The same is true for the distinction is, is that the plaintiffs in our case don't get that benefit. They have to work that seven hours. The coach, all he had to do was basically say, I am the coach as a result of being the coach, whether he decides to be on that field for one hour a day, one hour a week, or one hour a month, as long as he is holding that position, he's gotten that stipend. That's what it is. But in our particular case, it is particularly, it is specifically tied. You're saying that threat, that seven hour threshold does makes this a benefit that is tied to productivity levels, even though it doesn't matter what your productivity level is over seven. That's the meaningful distinction. Oh, that's the distinction. But yes, it is. It is tied. They don't receive that benefit. The mere fact that they are working at the golf course, putting your golf clubs in there, cleaning them, taking care of the golf carts, does not give them the ability to play free rounds of golf or discounted rounds of golf, unless they work there for seven hours per week. Unless they reach that threshold. Okay. Thank you. You have reserved five minutes for rebuttal. If I messed this up, I am trying. Ms. Viest? Perfect. Okay. Just like a Czechoslovakian. Oh, there you go. May it please the court. My name is Helene Viest with the Palm Beach County Attorney's Office, and I represent Palm Beach County, which urges affirmance of the order dismissing the plaintiff's complaint. Judge Luck, I'm sorry. I am not prepared to answer your question regarding jurisdiction. That wasn't briefed and wasn't part of the discussion. Well, it's jurisdictional, so we have to decide it no matter what. Absolutely. I understand. I'm not asking you the legal side of it, but the factual side of it. Do I have any facts wrong? In other words, are these people the three named plaintiffs? Did these two other folks opt in, and is the dismissal only as to the three named plaintiffs? Those are just facts. You have the facts correct, as far as I ... Again, because it wasn't forefront on the issues that were addressed. I haven't delved deeply into it, but that's my understanding. So whatever the legal implications are, what they are. Exactly. I understand. The county urges affirmance of the order dismissing this appeal because, in fact, what the plaintiffs were promised was reduced green fees. There is no significant difference between the benefit of reduced green fees and the benefit of a group insurance plan, which is expressly stated in the Code of Federal Regulations as an allowed benefit that an employer can offer. In fact, when one looks at the fact that these plaintiffs still pay for this benefit, just like a volunteer would pay for a group insurance plan, our volunteers would pay $15 per month. Counsel, I have a real ... Maybe I'm looking at it too simply. What we have before us is a 1286 motion that basically says these pleadings, as stated, don't make out a claim. I read it as the plaintiffs are saying, what we were doing, they laid it out very carefully. We say that's work for which we should be paid wages. You are saying, no, what you did is volunteering. So even the, I think the Myers case, those were cases that were decided after a summary judgment when a record has been built. So is it a bit much to ask the court to conclude, as you're asking, that this is a volunteer situation where we're literally required to look at the pleadings? Because the ultimate question is, are they volunteers or are they employees? Isn't that true? Yes, that's true, Your Honor. And what the county is arguing now is that the plaintiffs did not and could not allege facts when viewed objectively in the totality of the circumstances that would remove them from the public agency volunteer exception. And the district court below went thoroughly through each one of the allegations that were significant that were not conclusory. They allege constantly that they were paid in kind compensation. That's conclusory. But the district court went through and noted the ad that they've attached to their complaint that the county uses on its website to encourage volunteers, expressly states volunteers for a time. Well, wait, that's the second question I have. If the same advertisement had said, hey, employees, is it the tag, the label that determines what it is, or is it what actually occurs? The label is not determined. And wouldn't this case need to be developed so we, I think one of the cases say, you know, that each case is looked at and it's factual, peculiar factual circumstances work to that effect. And we've not looked at any of that yet. This is a question of, is this complaint sufficient to put the defense on notice and for this case to be developed that maybe it will turn out that they are volunteers. But I don't know that the court needs to make that decision. Your Honor, we allege they could not. They could never allege based on what is in their complaint now, they could never allege facts sufficient to remove them from the public agency volunteer exception. And yes, it's not significant alone that the ad that we seek volunteers with says the word volunteer four times. But that's just one of the totality of the circumstances. Viewing the complaint and the allegations of the complaint, we see the ad states volunteer four times. It says you can be outside, socialize with people who enjoy the same sport, who enjoy a certified course. You can socialize what volunteers do and you will be given a benefit, reduced green fees. One of the more persuasive arguments that your opposing counsel made in this presentation was that if we don't look at what actually the benefit happened, we looked at what they, what the benefit is potentially for a volunteer. That's how we look at this. And potentially if somebody works seven hours, so they work one day on the bags, um, and then the every other day they're an avid golfer and don't apparently independently wealthy, uh, play around every single day, the rest of the week, um, for whatever time limitations or course limitations there are. That would be $90 times six times 52, um, would be a lot of money and probably more than the minimum wage. If you add it all together, um, that seems to be more than a healthcare plan. Your honor. It's not. In fact, if a health, if an, a volunteer covered with an group insurance policy is diagnosed with cancer and is not having to pay $200,000 for treatment, that's far more. So that does not take us to judge Sands's question, which is, there's no evidence of what you just said. I mean, intuitively that's true, but there's no evidence, but there is evidence of how much around a golf is though. We have evidence of that. That's in the complaint, but the evidence of what a healthcare plan costs is not in there. You, you may be able to put that in summary judgment of, Hey, it's the same. It's way less than we would pay if we put these guys on our pension plan. Your honor. I'm not talking about the cost of the insurance plan. I'm talking about the benefit to the volunteers, which is what they're arguing. I know, but I know, but what they're saying is this is not just a $200, $2,000 stipend or a service award for doing a great job. Here's 200 bucks for at the Denny's to go get a nice sandwich over there. Um, what we're talking about here is a potential cost of somebody who is, again, just rough math here. I'm not very good at this. So 90 times six, that's a 450, $540 per week times 52 that I'm not going to embarrass myself, but that's a lot of money. Um, so I think we're talking about close to $25,000 at that, at that point. Uh, but I might be off a little bit. And that's the benefit that they're claiming that they were promised. If I promise you that you will have group health insurance, then under their reasoning, I've promised you a benefit of $200,000 if you're diagnosed with a serious illness. My point is we don't know that what you've just said, but I do know what they said. I think that's common. We're allowed to use common sense. We are allowed to use common sense, but I have no idea what a health insurance costs. I'm not an employer. I've, I've been on a government health insurance plan for my entire career, just about save a year or two. And I know what I pay, but I have no idea what the government pays. I assume it's a lot, but I have no idea what the government pays. But your honor, we're just asking you to take view of the fact that a cancer diagnosis results in hundreds of thousands of dollars of payment by the volunteer. I'm talking about the amount saved by the volunteer. There's simply no evidence of that to do so. None. I understand what you're saying, but I have no evidence of that. What I do have evidence of how much it costs and it seems to me more than what the courts have said is a reasonable or nominal amount that someone can be paid to be a volunteer. At some point it passes a threshold. Would you agree? At some point it does. I don't think we're there. And if you tell me what it is, tell me what it is, counsel. The fourth circuit has determined it's 2000, $2,100 fits below that level. You and I have established that at least as alleged, this is way more than that. So we're already way past that. Tell me where you think it is. Oh, I can't give you a figure you're on. I want to know what the county's position is for when something returns from a nominal or reasonable benefit to when it turns into essentially wages or salary. Your honor, what the county is saying is that that one question alone is not what the court is directed to look at. You are required to look at the totality of the circumstances. You can't simply say. When you start saying totality of the circumstances, we are starting to walk away from a motion to dismiss world potentially into a summary judgment world, which is I think what you're hearing from the bench. And certainly the McKay case that I just referenced that is a recent case coming from this circuit, it was on a summary judgment posture. And I would also ask, you are proceeding under a reasonable benefit analogy that this golf benefit is like a group insurance plan. What do we make of the fact that in that same regulation, it talks about benefits commonly or traditionally provided to volunteers? And I wonder if your answer to that question might push us again into summary judgment world. I understand your apprehension, your honor, and frankly, I haven't found a case that was dismissed on a motion to dismiss where the court would be going through the analysis. As you say, all of the cases are at the resolution after the resolution of the case. So what do we make of this commonly or traditionally provided to volunteers when you're opposing counsel is saying that, sure, group insurance plans or pension plans or length of service awards are commonly or traditionally provided, but providing free rounds of golf is not. How do you address the language of the regulation? Your honor, we look at the remaining language of section 29 code of federal, rather title 29 code of federal regulations, section 553.106. All of the language around that commonly or traditionally provided to volunteers. And when you look at the additional language, the Department of Labor has made clear that they are not going to close the door. That section, section D, says, for example, there's no indication that these are the only benefits that can be provided. You've also pointed out in your brief that we also have to read the rest of that, which provision D that says, which meets the additional test in paragraph F. But by going into F, I go back to the question that we're posing, is this more of a summary judgment situation? Because it says, whether the furnishing of these benefits would result in an individual losing their status as volunteers can only be determined by examining the total amount of payments made in the context of the economic realities of the particular situation. How do we evaluate the context of the economic realities of the particular situation at a motion to dismiss? There are sufficient allegations in this complaint to know that the plaintiffs are never going to be able to allege facts that make the economic reality of this situation something that would cause a court to determine that, in fact, this was not a reasonable benefit or a nominal fee. Section F does suggest that at a certain point, the furnishing of these benefits can result in the individual losing their status as volunteers. Back to Judge Luck's question, at what point does a nominal fee or a reasonable benefit become, in line, more of a salary or compensation? How can we determine that on this record? Your Honor, the county's position is that given the numbers that, in fact, the plaintiffs are alleging here, the benefit to the employees, which is the test that they're using, will never reach the level of a potential benefit for group health insurance. It will never reach that level. The district court analogized- Counsel, that can't really be the standard, and I'll tell you why. Because the minimum wage is what we're talking about here, and the minimum wage is far less than a group health insurance, whatever the county pays for a group health insurance plan. So let's say they pay cash. You're a volunteer, and at the end of the day, we're going to pay you 90 bucks every day after you work 70 hours, seven hours. You would agree with me that would be compensation, right? I'm sorry, Your Honor, I see that- Oh, you have two minutes left. Okay, great. You agree with me that that would be compensation, right? I'm sorry, Your Honor, if I was- The hypothetical is this. They work seven hours, and the agreement, the website says, we need volunteers, sign up, come down to the golf course, work seven hours, year round, and every day after that, we're going to hand you $90. Okay. Is that compensation? That's compensation. Right. Why is that any different than this? Because they weren't handed any money. In fact, they handed the county $5. What they're trying to do is they're turning the analysis on its head and saying, let's not look at how much the county gave you, which really is zero, right? We weren't going to get money for these tea times. It's a coupon. But let's look at what the benefit to these employees are, and what we're suggesting is that- Let's say the county ran a grocery store for whatever reason. The deal was, we need volunteers to bag the groceries and to bring them out to the cars. At the end of the day, you can get any box of cereal you want for $0.05, as opposed to the $2.50 that are there. That's a benefit, isn't it? You're paying someone cash. You're just discounting. Sure. 10% discount at a gift store. It's a benefit. Right. Sure. How is that not payment in the same way that it's payment to discount $90 for something that normally costs $95? It's a benefit that results in less money coming out of the volunteers' pockets. We agree with that. I'm just having a hard time that just because the benefit is not cash but a coupon for cash, that it's not the same exact thing. I'm having a hard time with that. Well, Your Honor, I can only say the district court determined this was analogous to a group insurance plan, a workers' compensation plan, and that looking at the benefit to the volunteer of that particular money that they save, they must save less than a group insurance plan would save a volunteer that was covered by that. Thank you. We urge affirmance. All right. Mr. Friedman, you have five minutes. So I want to, I guess based upon what I've heard, make a couple of points very clear. We know that whether you get the money in your pocket or not, the IRS is going to tax you or can tax you if you get a reduction in something for more than 20%. Yeah, but counsel, that's not dispositive in any way. By the way, that'd be true if they put you on the pension plan or put you on the health care plan. Now, let's talk about that, though, for a second, because what we know is that in accordance with the regulation, more specifically 553.106 subsection D, as Your Honor, Judge Branch and I think Judge Sands, you also mentioned, what we know is what we can, I think, reasonably conclude is that a substantially reduced opportunity to play golf at a high-end golf course is not quite the kind of benefit that is traditionally and commonly provided to volunteers of state and local government. How can we say that that's true? And I think this depends on how you look at common and traditional. When the advertisement that you attach says all volunteers to the golf courses are offered this benefit. In other words, it wasn't just the three guys here at this particular golf course at this particular time frame that's there. The county is saying to anyone who volunteers at any of its four golf courses in an unlimited way, this is the offer that's there. That seems to be common and traditional based on what's attached to the complaint. Well, again, but that goes to whether or not then the workers intended to go ahead and get compensated or intended to go ahead and receive that as the benefit is not as relevant because they can't waive their rights in the FLSA. So as a result, for instance, what is commonly offered in this situation, and I think that's the reasons why the language is in the particular section that I think that Judge Branch had pointed out as well, is that it would be, one would reasonably- Can you get another microphone, counsel? I apologize. One would reasonably conclude that if the worker is going to be there and being working with the golf carts and going out there, one would think that there's going to be workers' compensation insurance that they're going to have. And I think that what is intended by the language in that statute or in that regulation is to say, the mere fact that that person is going to go ahead and be on somebody's workers' compensation plan shouldn't go ahead and exclude them from still being volunteers. It makes sense that the county is going to offer that kind of a benefit to that kind of a person who is working and volunteering because they're placed in that particular situation. But if the advertisement had said, forget what it says, it says, we need volunteers. Volunteers may enjoy the outdoor scenery, meeting with friends, and the great workers' compensation that we offer to all volunteers. You would agree with me that that would commonly and traditionally be what's offered to volunteers of county golf courses? The ability to be outdoors and enjoy the outdoors or receiving the discount of the golf? The workers' compensation, that's the part. I would think so, yes. Because that's part of the ad. Sure. So if part of the ad here is not workers' compensation, but instead, everyone gets a free round of golf or gets to have reduced golf, then isn't that commonly given to volunteers who volunteer at the golf course? Except under that hypothetical, that's not the hypothetical. That's the allegations. Well, true. But in the complaint, the allegations in the complaint clearly state that these people, these workers, basically had not gone ahead and volunteered there. For any other reason other than that they were expecting to go ahead and have substantially reduced rounds of golf. And as a result, what we know is that at least, I believe, based upon the question that Judge Sands asked, is questioning whether or not that really is the kind of benefit that one would commonly and traditionally expect from a state government agency. It can't be. I mean, looking at, just reasonably looking at this, logically . . . What if we agree with you that this is not a motion to dismiss case? We reverse the district court, send it back. You go to summary judgment. As part of the record, this is my hypothetical, the county introduces evidence that across the United States, public golf courses, this is what they do. They advertise for volunteers. They have a threshold hourly requirement if you volunteer your time, and you get unlimited rounds of golf with certain restrictions. Does the county win because they have demonstrated that when it comes to public golf courses, it is commonly and traditionally provided to volunteers? Do you lose? Well, under that hypothetical, I would say still no, and the reasons why is because at some point in time during that discovery process, that court would also hear from all other private golf courses who have workers in the same situation, in the same place of employment. But that's not what the regulation says. Commonly traditionally provided to volunteers of state and local government agencies. So county puts into the record, all across the United States, this is what, this is how public courses provide benefit, compensate, however we want to choose to talk about it. The volunteers for the public golf courses. Do they, does the county win? Again I would have to say no, and the reasons why is because you would still have to take a look at the fact that in the golf course across the street that is a private golf course is also commonly, is also offering those same employees that same benefit. But why, you're fighting the language of the regulation. Well, because what I would be saying at that point in time is no, no, no, that although you are offering that, you're offering that because you're competing again with those across the street who offer the same thing, but yet the distinction is they're also getting paid minimum, at least minimum wage. So wouldn't that also be true though, and I think it's going to have to be the last question because of time, but wouldn't that also be true of a pension plan and a workers comp plan and a healthcare plan? The guy across the street is getting those things too, and still it's commonly and traditionally given by a municipality or a county or state. It could be, but then I think that's exactly why the language of the regulation goes on to state which meets the additional test in paragraph F of this section, and that's the economic realities. And that's where I think that procedurally, this is a significant problem. Thank you. Thank you very much. Thank you both. We have the case under advisement, and this court is in recess.